87 U.S. 36 (____)
20 Wall. 36
PACIFIC RAILROAD COMPANY
v.
MAGUIRE.
Supreme Court of United States.

*41 Messrs. W.M. Evarts, J. Baker, and J.B. Henderson, for the company, plaintiff in error.
Messrs. Montgomery Blair and F.A. Dick, with whom was Mr. A.H. Buckner, contra, contended.
*42 Mr. Justice HUNT delivered the opinion of the court.
The first question is this: By the acts organizing this company, and by the acts loaning the credit of the State and the proceedings under the same, was an agreement created on the part of the State that the Pacific road should not be taxed until it was built and finished and had declared a dividend, and that for two years after it was finished it should be liable to taxation only in common with other property of the State and at the same rate?
The right of taxation is a sovereign right, and presumptively belongs to the State in regard to every species of property and to an unlimited extent. The right may be waived in particular instances, but this can only be done by a clear expression of the legislative will. The cases of Tomlinson v. Branch,[*] and Tomlinson v. Jessup,[] in this court, and many others referred to in those cases, show that when a contract of exemption from taxation is thus established it is binding upon the State, and the action of the State in the passage of laws violating its terms will not be sustained.[] The principles of law are sufficiently settled. The real question arises upon their application to the facts of the case.
Upon the facts presented by the agreed case before us we are of the opinion 
1st. That the twelfth section of the act of 1852 created a contract between the State and the railroad company, by which the railroad was exempt from taxation until it was completed and put in operation, and until it should declare a dividend on its capital stock, not, however, extending longer than two years after its completion.
2d. That the ordinance of 1865, imposing a tax of ten per cent. upon its gross earnings before the road was completed and in operation, and had declared a dividend, was a violation of this contract, and that the levy for its enforcement was illegal.
We omit a reference to other questions which have been *43 argued and express no opinion upon them. We base our opinion upon the effect of the statutes already cited.
The authorities which have been referred to show that a State legislature may make a contract to exempt a corporation from taxation by which it will be bound.
That the facts recited constitute such an agreement we think sufficiently plain. The Pacific corporation was unable to raise funds for completing its road. To induce it to go on with its work and to induce individuals and counties to subscribe for what the legislature evidently deemed an enterprise of public benefit, it made loans of the credit of the State from time to time. To make the franchise still more valuable to the company, and to the end that individuals and counties should be induced to subscribe to the stock, the legislature added an exemption from taxation until the road should be completed and in operation, and should have declared a dividend. That the money value of this exemption was great is evident from the fact that the tax imposed for a single year, commencing October 1st, 1866, amounted to $253,644.
This transaction amounted to a contract between the State and the corporation that there should be no taxation of the company until the occurrence of the stipulated events.[*] In delivering the opinion in The Wilmington Railroad v. Reid,[] Mr. Justice Davis says: "It has been so often decided by this court that a charter of incorporation granted by a State creates a contract between the State and the corporators, which the State cannot violate, that it would be a work of supererogation to repeat the reasons on which the argument is founded... . If the contract is plain and unambiguous, and the meaning of the parties to it can be clearly ascertained, it is the duty of the court to give effect to it the same as if it were a contract between private persons, without regard to its supposed injurious effects upon the public interests."
*44 The statute of 1852 provided for an exemption from taxation of the "Pacific Railroad," its bed, and of its "buildings, machinery, engines, cars, and other property." The tax imposed by the ordinance of 1865 was an "annual tax of ten per centum of all their gross receipts for the transportation of freight and passengers." It was directed "to be levied and collected from the Pacific Railroad." In The Wilmington Railroad v. Reid,[*] it was held that a statute exempting all the property of a railroad company from taxation exempts not only the rolling stock and real estate owned by it and required by the company for the successful prosecution of its business, but its franchise also. In the case before us the road-bed, buildings, machinery, cars, and other property not only, but the "Pacific Railroad" is declared to be exempt from taxation. We cannot doubt that a contract not to tax a railroad company or its property is broken by the levy of a tax upon its gross receipts for the transportation of freight and passengers.
A suggestion is made that the imposition in question is not a tax, for the reason that the ordinance imposing it provides that the same shall be appropriated by the General Assembly in payment of the principal and interest due and to become due upon the bonds issued to the company by the State. The purpose to which the State shall apply the proceeds of a tax is not material so long as it is a public purpose, and that the payment of the debts of a State is a public purpose does not admit of doubt. It is called a tax both in the agreed statement of facts before us and in the ordinance imposing it. Thus, "there shall be levied and collected an annual tax of ten per centum of all their gross receipts," &c., "which tax shall be assessed and collected in the county of St. Louis in the same manner as other State taxes are assessed and collected." "The tax in this ordinance specified shall be collected from each company," &c... . "Should either of said companies refuse or neglect to pay said tax as herein required," &c. A tax upon receipts *45 is one of the recognized modes of taxing corporations, as well under State laws as under the laws of the General Government.
The ordinance of 1852 was either the imposition of a tax or it was an act of high-handed violence, a forcible seizure of private property, without law or authority, an act which, if committed by an individual, would amount to robbery. The case before us will justify no such imputation upon the State of Missouri.
The result of these views is the REVERSAL OF THE JUDGMENT below, and in accordance with the stipulation in the record, judgment is ordered in favor of the plaintiff in error for six cents damages and for costs, and the case is remanded, with directions that a judgment be entered accordingly.
The CHIEF JUSTICE:
I concur in the judgment of the court which has just been announced, but not for the reasons assigned. If the assessment complained of is a tax, then I agree with the majority of the court in the opinion that it is a violation of the twelfth section of the act of December 25th, 1852, and void. I think, however, it is not a tax, but an exaction of the payment of the debt due from the railroad company to the State, and as such inconsistent with the provisions of the act of February 10th, 1864, which, upon its acceptance by the company, became a contract between the parties and binding upon each.
Justices CLIFFORD and MILLER dissented from the opinion of the court, because the act of the legislature referred to did not, in their judgment, exempt the company from the tax imposed by the ordinance.
Mr. Justice STRONG did not sit in the case.
NOTES
[*] 15 Wallace, 469.
[] Ib. 454.
[] Osborne v. Mobile, 16 Id. 481; Humphrey v. Pegues, Ib. 247, where the cases are collected.
[*] Humphrey v. Pegues, 16 Wallace, 244; Wilmington Railroad v. Reid, 13 Id. 264.
[] 13 Wallace, 266.
[*] 13 Wallace, 264.